IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| PUNA GEOTHERMAL VENTURE, | ) | CIVIL NO. 19-00451 SOM-WRP |
|---|---|---|
| Plaintiff, | ) | ORDER DENYING DEFENDANTS ALLIANZ GLOBAL RISKS US INSURANCE COMPANY AND ACE AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS COUNT "D" OF PLAINTIFF'S COMPLAINT |
| vs. | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; ACE AMERICAN INSURANCE COMPANY, | ) | |
| Defendants. | ) | |

ORDER DENYING DEFENDANTS ALLIANZ GLOBAL RISKS US INSURANCE COMPANY AND ACE AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS COUNT "D" OF PLAINTIFF'S COMPLAINT

## I. INTRODUCTION.

Defendants Allianz Global Risks US Insurance Company and Ace American Insurance Company (collectively, "the Insurers") have declined to cover damage to Plaintiff Puna Geothermal Venture's power plant on the Big Island. The damage was sustained when the Kilauea volcano erupted in May 2018.

Puna Geothermal asserts several claims against the Insurers based on their allegedly wrongful denial of Puna Geothermal's claims, including an unfair practices claim brought

under Nevada Revised Statutes § 686A.310(1). The Insurers argue that the unfair practices claim should be dismissed because Hawaii law, not Nevada law, applies to claims by Puna Geothermal that are not contract claims. The choice-of-law clauses in the insurance policies at issue, however, call for the application of Nevada law. Because Puna Geothermal's unfair practices claim falls within the choice-of-law policy language, this court denies the Insurers' motion to dismiss the Nevada unfair practices claim.

## II.     BACKGROUND.

On May 3, 2018, the Kilauea volcano on the Big Island erupted, causing molten lava to flow towards Puna Geothermal's power plant in lower Puna. ECF No. 1, PageID # 5. To protect the geothermal plant and the surrounding community, Puna Geothermal ceased operations and took several steps to minimize the harm caused by the lava flows. *Id.* at 5, 13. Those steps included removing flammable gases from the plant and plugging various wells to keep hydrogen sulfide from escaping. *Id.* at 13. Eventually, lava reached the geothermal plant, which was damaged. *Id.* at 5-6. The plant remains closed today. *Id.* at 6.

Several insurance policies purchased by one of Puna Geothermal's corporate parents, Ormat Technologies, Inc., covered the Puna geothermal plant. *Id.* at 5, 8-9. Allianz had issued one of those policies, and Ace had issued another. *Id.* at 7-8. Both

2

policies ("the Insurance Policies") contain a choice-of-law clause stating that "[t]his policy shall be governed by the laws of the State of Nevada[.]"[1] ECF No. 31-3, PageID #162; ECF No. 31-4, PageID # 245.

Both policies also inlcude "Time Element Coverage" clauses. Each such clause insures Puna Geothermal against losses caused by actions taken for the temporary protection and preservation of the geothermal power plant. ECF No. 1, PageID # 12-13. Puna Geothermal says that it is entitled to compensation under the Time Element Clause because it suffered considerable losses as a result of the steps it took to protect its geothermal plant from further damage. *See id.* at 13. Puna Geothermal filed claims with both Allianz and Ace under the Time Element Clause, but Allianz and Ace denied the claims. *Id.* at 13-14.

On August 21, 2019, Puna Geothermal filed this action, asserting four claims: (1) a breach of contract claim against Allianz, (2) a breach of contract claim against Ace, (3) a breach of the implied covenant of good faith and fair dealing claim against both Allianz and Ace, and (4) a claim under Nevada

---

[1] Puna Geothermal's complaint did not mention the choice-of-law clauses. This court nevertheless considers the choice-of-law clauses because the complaint refers extensively to the Insurance Policies, the policies form the basis of Puna Geothermal's claims, and the inclusion of the choice-of-law language in the Insurance Policies is not disputed. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Revised Statutes § 686A.310(1) against both Allianz and Ace. ECF No. 1, PageID # 15-20.

**III.     STANDARD OF REVIEW.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of a complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, the court may take judicial notice of and consider matters of public record without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See Khoja*, 899 F.3d at 998. The court may also consider documents that have been incorporated by reference into the complaint. *Id.*

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient

4

to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**IV.    ANALYSIS.**

The Insurers ask this court to dismiss Puna Geothermal's unfair practices claim, brought under Nevada Revised Statutes § 686A.310(1). They contend that Puna Geothermal's noncontractual claims are governed by Hawaii law, and that although Hawaii has its own unfair practices law in chapter 480 of Hawaii Revised Statutes, nothing in Hawaii law is comparable to Nevada's section 686A.310(1). ECF No. 21, PageID # 105-09. That Nevada statute provides, in relevant part:

> 1. Engaging in any of the following activities is considered to be an unfair practice:
>
> (a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.
>
> . . .
>
> (c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.
>
> . . .
>
> (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

6

> (f) Compelling insureds to institute
> litigation to recover amounts due under an
> insurance policy by offering substantially
> less than the amounts ultimately recovered in
> actions brought by such insureds, when the
> insureds have made claims for amounts
> reasonably similar to the amounts ultimately
> recovered.
>
> . . .
>
> (n) Failing to provide promptly to an insured
> a reasonable explanation of the basis in the
> insurance policy, with respect to the facts
> of the insured's claim and the applicable
> law, for the denial of the claim or for an
> offer to settle or compromise the claim.

These subsections are cited in the complaint.

The Insurers' motion raises a choice-of-law issue. As a district court sitting in diversity, this court applies Hawaii's choice-of-law rules. *Jou v. Adalian*, 2018 WL 1955415, at *5 (D. Haw. Apr. 25, 2018). Under those rules, it is Nevada's unfair practices law that governs Puna Geothermal's tort claim.

### A. The Conflict Between Hawaii Law and Nevada Law is not a "Red Herring."

As an initial matter, Puna Geothermal contends that the Insurers do not even raise a choice-of-law issue. Puna Geothermal argues that, because the allegedly tortious denial of coverage was communicated to Ormat in Nevada, this case simply involves the application of Nevada law to conduct that occurred in Nevada. ECF No. 31, PageID # 136-37. Puna Geothermal therefore maintains that the Insurers' choice-of-law argument is a "red herring." *Id.* at 137. This court disagrees.

7

Ordinarily, courts decide cases based on "local law," or "the body of standards, principles, and rules . . . which the courts of that state apply in the decision of controversies brought before them." Restatement (Second) of Conflict of Laws § 1 cmt. a (1971); *id.* § 4.[2] Those rules of decision include statutes. That paradigm breaks down "when legally significant aspects of a case are divided between two or more states." *Id.* § 1, cmt. b. Under those circumstances, choice-of-law rules must determine which state's rules of decision apply. *Id.* § 1.

As Puna Geothermal points out, some legally significant aspects of this case occurred in Nevada. For instance, the insurance contracts at issue were purchased by a Nevada entity for Puna Geothermal.[3] ECF No. 31-3, PageID # 154, 158; ECF No.

---

[2] The Hawaii Supreme Court has not adopted the Restatement's approach to resolving conflicts of law. *See Mikelson v. United Services Auto Ass'n*, 107 Haw. 192, 199 n.6, 111 P.3d 601, 608 n.6 (2005). This court cites the Restatement here for its discussion of how conflicts issues arise, not as controlling any substantive approach to resolving those issues.

[3] Puna Geothermal also asserts that the Insurers' correspondence denying coverage was sent to Nevada. ECF No. 31, PageID # 136. That allegation is not in the complaint. Even if it were, however, that would not necessarily be a determinative factor. An insurer that sent a letter denying coverage to a policyholder while she was on vacation in the Bahamas would not thereby give the Bahamas a genuine interest in applying Bahamas law to a tort claim arising out of the denial.

Of course, this court recognizes that the denial went to Nevada for a less fortuitous reason. As discussed above, Puna Geothermal allegedly had owners more permanently located in Nevada. This scenario simply demonstrates that it is the location of Puna Geothermal's owners, and not the jurisdiction

8

31-4, PageID # 229, 241.  Certain legally significant aspects of the case, however, occurred elsewhere.  The policy at issue insured property located in Hawaii, ECF No. 1, PageID #8-9, a Hawaii partnership is an insured and the plaintiff, *id.* at 2, and the decision to deny coverage appears to have been made in a third state.  *See* ECF No. 31-5, PageID # 361.  It is therefore necessary to conduct a choice-of-law analysis to determine which state's law applies to Puna Geothermal's claim under Nevada's unfair practices statute.

**B. The Choice-of-law Provision in the Insurance Contract Governs Puna Geothermal's Unfair Practices Claim.**

Puna Geothermal also contends that it can bring a claim under Nevada Revised Statutes § 686A.310(1) because the choice-of-law clauses in the Insurance Policies call for the application of Nevada law.  "This district has recognized that a choice-of-law provision governs the interpretation of a contract and rights arising therefrom, but not necessarily [a] related, non-contractual claim."  *Hawaii Island Air, Inc. v. Merlot Aero Ltd.*, 2015 WL 675512, at *19 (D. Haw. Jan. 30, 2015); *see also Wilcox v. Lloyds TSB Bank, PLC*, 2014 U.S. Dist. LEXIS 99186, at *35-44 (D. Haw. June 10, 2014).  Courts must examine the specific language of a choice-of-law clause to determine whether it

---

where those owners received the correspondence, that may provide the relevant contact.

extends to noncontract claims related to the underlying agreement. *See Hawaii Island Air,* 2015 WL 675512, at *19 n.12.

The clauses at issue here state that "[t]his Policy shall be governed by the laws of the State of Nevada[.]" ECF No. 31-3, PageID # 162, ECF No. 31-4, PageID # 245. Other courts have split over how to interpret such language. Some have held that clauses stating that agreements are "governed by" the laws of a particular state are broad and extend to related tort claims. *See, e.g., Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1153-55 (Cal. 1992). Others have held that identical clauses are narrow and only apply to breach of contract claims.[4] *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335–36 (2d Cir. 2005); *Hawaii Island Air,* 2015 WL 675512, at *19 n.12.

Before reaching that issue, however, this court must resolve the threshold question of what state's law determines the scope of the choice-of-law clause. Courts have split on that

---

[4] Puna Geothermal contends that this court interpreted a similar clause narrowly in *Property Rights Law Group, P.C. v. Lynch*, 2014 WL 2452803 (D. Haw. May 30, 2014). The contract in *Lynch* specified that Illinois law "shall govern *the validity* of th[e] Agreement." *Id.* at *13 (emphasis added). The choice-of-law clauses in the Insurance Policies are broader, because they state that the policies are "governed by" Nevada law. Moreover, in *Lynch* the choice-of-law issue had "not been properly raised" by the parties briefs, and this court decided not to "analyze [the issue] on its own." *Id.*

10

issue as well.  Some courts have held that because there is no dispute that the contract is to be *interpreted* in accordance with a particular state's law, when an issue of contractual interpretation arises, that particular state's law should determine the scope of the choice-of-law clause.  *Nedlloyd Lines*, 834 P.2d at 1154 n.7; *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1032 (Del. Ch. 2005); *Odin Shipping Ltd. v. Drive Ocean V MV*, 2000 WL 576436, at *1 (9th Cir. May 11, 2000) (unpublished).  Other courts have reasoned that because this is a choice-of-law issue, the forum state's law should determine the scope of the clause*.  Fin. One Pub. Co.*, 414 F.3d at 332; *see also Wilcox*, 2014 U.S. Dist. LEXIS 99186, at *39.

This court concludes that Nevada law determines the scope of the choice-of-law clause.  As the California Supreme Court recognized, this issue turns on the meaning of the words in the contract.  *Nedlloyd Lines*, 834 P.2d at 1154 n.7.  The contracting parties agreed that the language of the Insurance Policies would be interpreted in accordance with Nevada law.  *Odin Shipping Ltd*, 2000 WL 576436, at *1 ("The scope of that provision is a matter of contract construction and interpretation, however, which would in turn be governed by the law selected in the choice-of-law provision.").  Indeed, under the alternative rule, which looks to the law of the forum, the meaning of the contract would vary depending on the state where

litigation occurred.  This court submits that the meaning of a contract should not change based on such a contingency.

As it turns out, for the purposes of deciding this motion, the laws of Hawaii and Nevada are similar in all relevant respects.  The parties have not cited any authority from either the Hawaii Supreme Court or the Nevada Supreme Court directly addressing the scope of the Insurance Policies' choice-of-law clause, and the court has not itself located any such decisions.  Both states, however, agree on several general principles that apply here.

First, when interpreting an insurance contract, both states ask "what a reasonable person in the position of insured would have understood [the contract] to mean[.]"  *Griffin v. Gov't Emp. Ins. Co.*, 464 P.2d 502, 503 (Nev. 1970) (quotation marks omitted); *see also Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) ("We interpret an insurance policy from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." (quotation marks omitted)); *Fortune v. Wong*, 68 Haw. 1, 11-12, 702 P.2d 299, 306 (1985) (holding that courts must enforce "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts" (quotation marks and brackets omitted)).

Second, both states also instruct courts to interpret contracts in a manner that "effectuate[s] the intent of the parties[.]" *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007); *see also Brown v. KFC Nat'l Mgmt. Co.*, 82 Haw. 226, 240, 921 P.2d 146, 160 (1996) ("[I]n construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties[.]" (brackets and quotation marks omitted)).

Third, both the Hawaii and Nevada Supreme Courts look to California law when their own law is silent on a particular issue. *See Platinum Unit-Owners' Ass'n v. Residential Constructors, LLC*, 2015 WL 1186530, at *5 (D. Nev. Mar. 16, 2015) ("Nevada courts often look to California law where Nevada law is silent."); *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996) ("Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance."); *Great Divide Ins. Co. v. AOAO Maluna Kai Estates*, 492 F. Supp. 2d 1216, 1227 (D. Haw. 2007) ("[T]his rule is followed by California courts, to which Hawaii courts look for precedent on issues that have not been addressed under Hawaii case law."); *cf. Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 132, 920 P.2d 334, 346 (1996) (looking to California law on an issue of first impression).

All three principles support a broad interpretation of the Insurance Policies' choice-of-law clauses. An ordinary person reading that "[t]his Policy shall be governed by the laws of the State of Nevada" would expect Nevada law to apply to any dispute related to the agreement.[5] *See Nedlloyd Lines*, 834 P.2d at 1154. Moreover, a broad interpretation is consistent with the parties' intent. As the California Supreme Court explained, sophisticated parties attempt to provide for the "businesslike resolution of possible future disputes." *Nedlloyd Lines*, 834 P.2d at 1154. Such parties would not "intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." *Id.*; *see also Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006) (reasoning that a narrow interpretation "would create uncertainty of precisely the kind that the parties' choice-of-law provision sought to avoid"). Nor would sophisticated parties want a "protracted litigation battle concerning only the threshold question of what law was to be applied." *Nedlloyd Lines*, 834 P.2d at 1154. Thus, "[w]hen a rational businessperson enters into an agreement [that] provides

---

[5] The Insurers rely on *Hawaii Island Air*, which interpreted a similar choice-of-law clause narrowly. 2015 WL 675512, at *19 n.12. But *Hawaii Island Air* involved a sales contract, not an insurance contract. *Id.* at *1. To reiterate, in both Hawaii and Nevada, the meaning of an insurance contract depends on how an ordinary person would read the contractual language.

14

that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship." *Id.*

This court therefore concludes that the Nevada Supreme Court (and the Hawaii Supreme Court) would follow the California Supreme Court's decision in *Nedlloyd Lines*. This court reads the choice-of-law provisions in the Insurance Policies broadly as providing that Nevada law applies to any claims arising out of the parties' contractual relationship, even if those claims are not contract claims. The choice-of-law clauses permit Puna Geothermal to bring an unfair practices claim based on Nevada Revised Statutes § 686A.310(1). This court denies the Insurers' motion to dismiss that claim.

**V. CONCLUSION.**

The Insurers' motion to dismiss is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 5, 2019



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Puna Geothermal Venture v. Allianz Globak Risks US Insurance Company*, Civ. No. 19-00451 SOM-WRP; ORDER DENYING DEFENDANTS ALLIANZ GLOBAL RISKS US INSURANCE COMPANY AND ACE AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS COUNT "D" OF PLAINTIFF'S COMPLAINT